**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KEVIN TURNER, <br><br> Plaintiff, <br><br> v. <br><br> ACER THERAPEUTICS INC., STEPHEN J. ASELAGE, JASON AMELLO, JOHN M. DUNN, MICHELLE GRIFFIN, and CHRIS SCHELLING, <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Kevin Turner ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. This is a stockholder action brought by Plaintiff against Acer Therapeutics, Inc. ("Acer" or the "Company") and the members of Acer's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the Board's attempt to merge Acer with Zevra Therapeutics, Inc. ("Zevra") (the "Proposed Transaction").

2. On August 30, 2023, Acer, Zevra, and Zevra's wholly-owned subsidiary Aspen Z Merger Sub, Inc. ("Merger Sub") entered into an Agreement and Plan of Merger (the "Merger Agreement"). Pursuant to the terms of the Merger Agreement, Acer and Zevra will combine, with

each outstanding share of Acer common stock converted into the right to receive 0.1210 shares of Zevra common stock and one non-transferable contingent value right ("CVR")[1] for each outstanding share of Acer common stock.  In connection with the Proposed Transaction, Zevra has also purchased Acer's secured debt from Nantahala Capital.  Upon closing of the Proposed Transaction, Acer's and Zevra's current stockholders will own approximately 7.6% and 92.4% of the combined company, respectively.

3. On October 10, 2023, the Board authorized the filing of the materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. Specifically, the Proxy Statement, which recommends that Acer stockholders vote their shares in favor of the Proposed Transaction, contains materially incomplete and misleading information concerning, among other things: (i) Acer's and Zevra's financial projections; (ii) the financial analyses that support the fairness opinion provided by the Company's financial advisor, William Blair & Company, LLC ("William Blair"); (iii) the background of the Proposed Transaction; and (iv) potential conflicts of interest faced by Company insiders.

4. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Acer stockholders need such information in order to make a fully informed decision in connection with the Proposed Transaction.

5. The special meeting for Acer stockholders to vote on the Proposed Transaction is currently scheduled for November 8, 2023.  It is imperative that such Exchange Act violations are promptly cured to enable Plaintiff and Acer's other shareholders to make an informed decision

---

[1] The non-transferable CVRs will entitle the Acer stockholders to receive up to $34 million in cash upon the achievement of certain commercial milestones for OLPRUVA, and an additional $42 million in cash upon the achievement of certain regulatory milestones for other development programs.

whether to vote their shares in favor of the Proposed Transaction. Therefore, Plaintiff seeks to enjoin the stockholder vote unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District. Acer's common stock trades on the Nasdaq Capital Market, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of shares of Acer common stock.

10. Defendant Acer is a Delaware corporation, with its principal executive offices located at One Gateway Center, Suite 356, 300 Washington Street, Newton, Massachusetts 02458. Acer's shares trade on the Nasdaq Capital Market under the ticker symbol "ACER."

11. Defendant Stephen J. Aselage has been Chairman of the Board and a director of the Company at all relevant times.

12. Defendant Jason Amello has been a director of the Company at all relevant times.

13. Defendant John M. Dunn has been a director of the Company at all relevant times.

14. Defendant Michelle Griffin has been a director of the Company at all relevant times.

15. Defendant Chris Schelling is a Founder of the Company and has been the Chief Executive Officer and a director of the Company at all relevant times.

16. Defendants identified in paragraphs 12-15 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

17. Acer is a pharmaceutical company focused on the acquisition, development, and commercialization of therapies for serious rare and life-threatening diseases with significant unmet medical needs. Acer identifies and develops treatments where science can be applied in new ways for use in diseases with high unmet need. Acer's commercial asset OLPRUVA (sodium phenylbutyrate) for oral suspension is approved in the U.S. for the treatment of urea cycle disorders involving deficiencies of carbamylphosphate synthetase, ornithine transcarbamylase, or argininosuccinic acid synthetase. Acer's pipeline also includes clinical-stage candidates including: (i) EDSIVO for the treatment of vascular Ehlers-Danlos Syndrome in patients with a confirmed type III collagen mutation; (ii) ACER-801 for the treatment of induced Vasomotor Symptoms, post-traumatic stress disorder, and prostate cancer, which program is on pause while Acer conducts a thorough review of the full data set of results from its Phase 2a proof of concept clinical trial; and (iii) ACER-2820 for the treatment of certain viral infections comprising emetine as the active pharmaceutical ingredient.

**The Proposed Transaction**

18. On August 31, 2023, Acer announced the Proposed Transaction, stating, in relevant part:

Celebration, FL and Newton, MA – August 31, 2023 – Zevra Therapeutics, Inc. (NasdaqGS: ZVRA) ("Zevra"), a rare disease company melding science, data and patient need to create transformational therapies for diseases with limited or no treatment options, and Acer Therapeutics Inc. (Nasdaq: ACER) ("Acer"), a pharmaceutical company focused on development and commercialization of therapies for rare and life-threatening diseases, today announced the companies have entered into a definitive agreement pursuant to which Zevra would acquire Acer in a merger transaction having a total potential value for Acer stockholders of up to $91 million, consisting of (i) approximately 2.96 million shares of Zevra common stock valued at $15 million, or 0.121 shares of Zevra's common stock per share of Acer common stock based on the volume weighted average trading price (VWAP) of shares of Zevra's common stock during the 20 consecutive trading days ending on the trading date prior to today, and (ii) up to an additional $76 million in a series of potential cash payments pursuant to non-transferable Contingent Value Rights (CVRs) upon achievement of certain commercial and regulatory milestones for Acer's OLPRUVA (sodium phenylbutyrate) and Acer's EDSIVO (celiprol) within specified time periods. Certain additional cash payments are also possible pursuant to the CVRs with respect to milestones involving Acer's early-stage program ACER-2820 (emetine), as described further below. Zevra has also purchased Acer's secured debt at a discount from Nantahala Capital (Nantahala) through a series of transactions in capital efficient structure. In addition, Zevra has agreed to provide Acer with a bridge loan facility for up to $16.5 million, subject to certain terms and conditions. Both companies are deeply committed to developing and commercializing treatments for rare diseases with a strong focus on patients and remain dedicated to supporting communities with little or no existing therapeutic options. The merger is expected to expand Zevra's rare disease portfolio, as well as increase and diversify its revenues with the addition of a U.S. commercial asset, OLPRUVA, indicated for the treatment of UCDs. The transaction is subject to certain customary closing conditions, including, but not limited to, approval by Acer's stockholders.

"We believe that Acer's portfolio of rare disease programs, including the recent U.S. commercial approval of OLPRUVA for UCDs, is a perfect strategic fit for Zevra and creates significant opportunity for us to positively impact patient lives while creating shareholder value," said Joshua Schafer, Chief Commercialization Officer and Executive Vice President of Business Development of Zevra Therapeutics. "We are excited about Acer's clinical programs and are confident in the potential of OLPRUVA to bring UCD patients a more convenient and cost-effective treatment option over current therapies. Acer would bring unique rare

disease operations and capabilities that would serve as a foundation to support the commercialization of Zevra's pipeline as it advances."

Chris Schelling, Acer Therapeutics' Chief Executive Officer and Founder, added, "Following years of product development and commitment to rare disease communities, culminating in the FDA approval of OLPRUVA, we are pleased to see our assets, pipeline and team positioned to unite under the Zevra umbrella. We look forward to working with the Zevra team to ensure a smooth transition as we work together on behalf of patients."

"This merger would support Zevra's vision of becoming a leading rare disease company bringing life-changing therapies to patients with a significant unmet need," said Christal Mickle, Zevra's interim Chief Executive Officer and Chief Development Officer. "The commercial launch of OLPRUVA in the U.S. requires a small, highly-focused commercial team, which is complementary to what we intend to build for arimoclomol, our product candidate for the treatment of Niemann-Pick disease Type C (NPC). We believe there is potential to realize significant synergies across our commercial organizations as both UCDs and NPC are metabolic related conditions and there is overlap among those physicians that treat both disorders."

Financial Details and Terms of the Transactions:

The transactions, which have been approved by the Boards of Directors of both companies, are currently anticipated to close in the fourth quarter of 2023, subject to Acer stockholder approval, as well as other customary closing conditions. The merger is expected to accelerate Zevra's pathway to becoming a commercial-stage company by adding OLPRUVA, an FDA-approved asset, which is expected to add to Zevra's revenue. There are potential synergies to be realized by combining Acer's operations with Zevra's capabilities in preparation for the potential launch of arimoclomol. In addition, Zevra expects to acquire significant net operating loss (NOL) tax assets as part of this merger, providing potential tax savings against future earnings.

Under the terms of the definitive agreement, at closing, Zevra would issue 0.121 of a share of Zevra's common stock in respect of each share of Acer's common stock. In addition, Acer stockholders of record as of immediately prior to the effective time of the merger would receive non-transferable CVRs entitling the holders to receive up to $34 million in cash upon the achievement of certain commercial milestones for OLPRUVA, and up to an additional $42 million in cash upon the achievement of certain regulatory milestones for OLPRUVA and EDSIVO.

Approximately 2.96 million shares of Zevra common stock to be issued in the merger is calculated by dividing $15.0 million by the VWAP of Zevra's shares of common stock during the twenty consecutive trading days through yesterday,

which was $5.0667. The 20-day trailing VWAP value represents a discount of approximately 2% to yesterday's closing share price for Acer.

The non-transferable CVRs will entitle the Acer stockholders of record to receive up to $34 million in cash upon the achievement of certain commercial milestones for OLPRUVA, and an additional $42 million in cash upon the achievement of certain regulatory milestones for other development programs. The proposed transactions also include non-transferable CVRs for ACER-2820, Acer's early phase emetine program.

Based on the number of Zevra shares issued and outstanding as of June 30, 2023, together with the equity issued to Nantahala as part of the debt acquisition as described below, the aggregate number of shares issuable to Acer stockholders in the merger is expected to represent approximately 7.6% of the issued and outstanding common stock of Zevra following the merger.

To provide for a smooth transition and uninterrupted operations, and subject to certain conditions, Zevra has extended a bridge loan facility to Acer of up to $16.5 million to provide additional working capital to, among other things, support the commercial launch of OLPRUVA until the expected closing of the merger transaction, and to provide the $10 million payment to Acer's termination of the 2021 collaboration and license agreement by and between Acer and Relief Therapeutics, and Acer's related entry into an exclusive license agreement with Relief for the development and commercialization rights for OLPRUVA in geographical Europe.

Additionally, Zevra has purchased Acer's secured debt from Nantahala representing an aggregate of principal, accrued interest other fees and premiums of approximately $35.3 million, for a total of $28.5 million to be paid using a combination of $12 million in cash financed from Zevra's existing margin line of credit facility, $5 million in a new promissory note held by Nantahala, with a three-year maturity and bearing interest initially at 9% per annum (increasing to 12% per annum if the note remains outstanding six months after issuance), and $11.5 million in Zevra's common stock based on the 20-day trailing VWAP calculation described above, or approximately 2.27 million shares, or approximately 5.8% of the issued and outstanding common stock of Zevra following the merger.

Bryan Cave Leighton Paisner LLP served as legal advisor to Zevra and Canaccord Genuity LLC served as exclusive financial advisor to Zevra for the transactions. Pillsbury Winthrop Shaw Pittman LLP served as legal advisor to Acer, and William Blair & Company, LLC served as exclusive financial advisor to Acer.

**The Materially Incomplete and Misleading Proxy Statement**

19. On October 10, 2023, the Board caused to be filed a materially incomplete and misleading Proxy Statement with the SEC. The Proxy Statement, which recommends that Acer

stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (i) Acer's and Zevra's financial projections; (ii) the financial analyses that support the fairness opinion provided by the Company's financial advisor William Blair; (iii) the background of the Proposed Transaction; and (iv) potential conflicts of interest faced by Company insiders.

*Material Misrepresentations and/or Omissions Concerning Acer's and Zevra's Financial Projections*

20. The Proxy Statement fails to disclose material information concerning Acer's and Zevra's financial projections.

21. For example, for each of the Company's "Management Plan 1" and "Management Plan 2" projections, the Proxy Statement fails to disclose all line items underlying the Company's: (i) Adjusted EBITDA; (ii) EBIT; (iii) NOPAT; and (iv) Unlevered Free Cash Flow.

22. Moreover, the Proxy Statement fails to disclose a summary of any projections for Zevra relied upon by Company management, the Board, or William Blair in connection with the Proposed Transaction.

*Material Misrepresentations and/or Omissions Concerning William Blair's Financial Analyses*

23. The Proxy Statement fails to disclose material information concerning William Blair's financial analyses.

24. With respect to William Blair's *Analysis of Consideration*, the Proxy Statement fails to disclose a quantification of: (i) the inputs and assumptions underlying the discount rate of 21.5%; and (ii) the Company's fully diluted shares outstanding.

25. With respect to William Blair's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose a quantification of: (i) the Company's terminal values; (ii) the inputs and assumptions underlying the discount rates ranging from 20.0% to 23.0%; (iii) Acer's net debt

as of July 31, 2023; (iv) the upfront and buy-out payments to Relief Therapeutics Holdings AG; (v) Acer's total diluted shares outstanding; and (vi) the pro forma impacts of the capital raises.

26. With respect to William Blair's *Acer M&A Premiums Paid Analysis*, the Proxy Statement fails to disclose: (i) the identities of the transactions analyzed; and (ii) the individual premia observed for each transaction.

27. With respect to William Blair's *Zevra Selected Public Companies Analysis* and *Zevra Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose the individual financial metrics for each of the selected companies and transactions analyzed by William Blair.

*Material Misrepresentations and/or Omissions Concerning the Background of the Proposed Transaction*

28. The Proxy Statement fails to disclose material information concerning the background of the Proposed Transaction.

29. Specifically, the Proxy Statement fails to disclose whether any of the confidentiality or non-disclosure agreements the Company executed with interested parties during the sale process conducted prior to the Company's entry into the Merger Agreement include a "don't-ask, don't-waive" standstill provision that is still in effect and currently precluding any party from making a topping bid for the Company.

*Material Misrepresentations and/or Omissions Concerning Company Insiders' Potential Conflicts of Interest*

30. The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by Company insiders.

31. For example, the Proxy Statement fails to disclose whether any of Zevra's proposals or indications of interest mentioned management retention in the combined company following

9

the Proposed Transaction or the purchase of or participation in the equity of the surviving corporation.

32. In sum, the omission of the above-referenced information renders statements in the "Management Forecasts," "Opinion of Acer's Financial Advisor," "Interests of Acer Directors and Executive Officers in the Merger," and "Relevant Historical Background for Acer" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of Acer will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Acer**

33. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

34. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9. Acer is liable as the issuer of these statements.

35. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

36. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

37. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

38. The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

39. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

40. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

41. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

42. The Individual Defendants acted as controlling persons of Acer within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Acer and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

43. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

44. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

45. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

46. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Acer, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction,

including the stockholder vote on the Proposed Transaction, unless and until defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to file a Proxy Statement that does not contain any untrue statements of material fact;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: October 20, 2023

**LONG LAW, LLC**

By: */s/ Brian D. Long*
Brian D. Long (#4347)
3828 Kennett Pike, Suite 208
Wilmington, DE 19807
Telephone: (302) 729-9100
Email: BDLong@longlawde.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**ACOCELLI LAW, PLLC**
Richard A. Acocelli
33 Flying Point Road, Suite 131
Southampton, NY 11968
Tel: (631) 204-6187
Email: racocelli@acocellilaw.com

13